UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JOSEPH HOGAN,<br><br>            Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES, LLC,<br><br>           Defendants. | Case No.:<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

NOW COMES Plaintiff Joseph Hogan ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax"):

## INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. by Defendant Experian. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.

1

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. §§ 1331. Jurisdiction is also proper pursuant to 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff Joseph Hogan is a natural person residing in the city of Peachtree Corners in Gwinnett County, Georgia.

6. Plaintiff is a ("consumer") as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

consumers for the purpose of furnishing *consumer report*s, as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, Georgia 30092.

9. During all time pertinent to this Complaint, Defendants were authorized to conduct business in the State of Georgia and conducted business in Georgia on a routine and systematic basis.

10. Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate

3

commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

11. During all time pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12. Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14. Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

15. Defendants' credit reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically

includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16. Defendants gain access to and obtain consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

17. Defendants affirmatively seek out and obtain consumer bankruptcy information, and report this information in credit reports, including in the public record section and individual furnisher tradelines.

18. Defendants report consumer bankruptcy filings, and subsequent events, such as whether the bankruptcy is dismissed or discharged, as this materially affects the reported balance of debts, payment status, and whether an obligation to pay that debt remains.

19. The information reported by Defendants contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

20. The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

21. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

22. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

23. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

24. The more severe, recent, and frequent late payments are the greater the harm to the FICO Score.

25. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

26. Defendants obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of his consumer credit report, as well as the individual account tradelines.

27. Defendants know and regularly report the bankruptcy filing date, and subsequently report the final disposition, i.e., the discharge or dismissal (in the event the consumer does not obtain a discharge). Defendants are aware of the key dates in the progression of a bankruptcy case, and regularly report these dates as the date of the bankruptcy filing and the date of the discharge. If a bankruptcy case is dismissed, Defendants report the dismissal. The bankruptcy dismissal date and/or discharge date is obtainable from the same sources Defendants obtain the bankruptcy filing date information and is otherwise reasonably available to Defendants. Defendants are also separately notified of bankruptcy filings and discharges by tradeline furnishers who provide information to Defendants.

28. Defendants are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

29. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is also retrievable from the same sources Defendants obtain the bankruptcy case information, as well as

from information provided to Defendants from furnishers of account/tradeline information.

30. Rather than following reasonable procedures to assure maximum possible accuracy, Defendants reports information regarding pre-bankruptcy debts even if that information ignores or contradicts information provided by furnishers of account/tradeline information or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through reasonably available public records.

31. Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

32. Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code, on or about March 13, 2020, in the United States Bankruptcy Court for the Northern District of Georgia (Atlanta), case number no. 20-64491-lrc.

33. There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "nondischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11

U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

34. Accordingly, Plaintiff received an Order of Discharge, discharging his personal liability on the dischargeable debts on June 22, 2020.

35. Upon information and belief following Plaintiff's Chapter 7 Bankruptcy, Defendants prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, and filing date.

36. Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

37. For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendants are generally required to report the status of these debts as included in and/or discharged through bankruptcy with a $0 balance, unless the furnishers provide information showing that a debt was excludable from discharge.

38. Nevertheless, Defendants continued to report one or more accounts inaccurately, with an owed balance after Plaintiff received the discharge, instead of

9

accurately reporting the status of pre-petition debts as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

39. Defendants also failed to report in the public record section the disposition of the bankruptcy case as discharged, and reported the bankruptcy as filed, without indicating that Plaintiff's bankruptcy was discharged or the date thereof.

40. Defendants knew Plaintiff's Chapter 7 Bankruptcy was discharged from information they independently possessed, as well as information provided by tradeline furnishers, who report this information to Defendants.

41. Notably, the other national consumer reporting agency, TransUnion reported the date of Plaintiff's bankruptcy discharge, as well as the bankruptcy filing date, in the public record section of its credit report, and the individual account tradelines.

42. Experian continued to report one or more accounts inaccurately, with negative payment history between the time the bankruptcy petition was filed and when Plaintiff received the discharge, instead of accurately reporting the status of the pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

43. Following Plaintiff's Chapter 7 Bankruptcy discharge, Experian inaccurately reported Plaintiff's Credit Acceptance Account, no. xxxxxx81, which

was opened on or about March 9, 2017 as having a Payment Status of "Repossession" and an owed Balance of $16,857, even though Plaintiff's Chapter 7 Bankruptcy discharged this account/debt, there was no balance owed, and the status was not "repossession."

44. Experian's reporting of the Credit Acceptance Account was therefore facially inaccurate.

45. Experian also inaccurately reported Plaintiff's Santander Consumer USA Account (the "Santander" Account) no. 300002XXXXXXXXXXX, which was opened on or about December 16, 2016 as having a Payment Status of "Charge-off" from March 2017 through January 2020.  Experian also reported that this account/debt was "transferred to another lender" and "purchased by another lender," even though Plaintiff's Chapter 7 Bankruptcy discharged this debt, there was no balance

46. The status of Charge Off in the credit reporting industry does not mean that a debt is no longer owed, so it is inaccurate for Experian to fail to report that the debt was included in Plaintiff's Chapter 7 Bankruptcy and discharged thereby, which was in fact the case.

47. Experian's reporting of the Santander Account was therefore inaccurate.

48. Notably, the other national consumer reporting agencies, Defendant Equifax and (non-party) TransUnion did not inaccurately report the Santander Account like Experian. Both of these consumer reporting agencies reported that the Santander Account was discharged in Plaintiff's Chapter 7 Bankruptcy.

49. Plaintiff also discovered that Equifax was reporting his Credit Acceptance Account inaccurately.

50. Equifax reported his Credit Acceptance Account, which was opened on or about March 9, 2017, as having an Account Status of "Repossession" and a Reported Balance of $16,857, even though Plaintiff's Chapter 7 Bankruptcy discharged this debt, there was no balance owed, and the status was not "repossession."

51. Notably, TransUnion, the other national consumer reporting agency, correctly reported the Credit Acceptance Account and Santander Account as discharged through bankruptcy with $0 balances owed.

52. Defendants inaccurately report Plaintiff owes a large balance on the Credit Acceptance Account, and also report inaccurate statuses of the Credit Acceptance Account, thereby damaging Plaintiff's credit.

53. Experian also inaccurately reports that Plaintiff was late on payments that were not actually late payments; further damaging Plaintiff's credit.

54. Defendants also inaccurately report the status of these debts, even though the debts are in fact discharged, Plaintiff is no longer personally liable for the debts, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge from information Defendants obtain independently, as well as from tradeline furnishers and other account/tradelines, which report the same types of pre-bankruptcy debts as being included in/discharged in bankruptcy with $0 balances.

55. Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

56. Upon information and belief, Plaintiff applied for and was approved a credit card with First Premier Bank at less favorable terms due to the inaccurate information Defendants published to First Premier Bank in its review of Plaintiff's credit file.

57. Upon information and belief, Plaintiff applied for and was denied credit cards and Auto Loans with Delta Community Credit, Microbilt Corporation, Capital One, and Fit Credit due to the inaccurate information Defendants published

to Delta Community Credit, Microbilt Corporation, Capital One, and Fit Credit in their review of Plaintiff's credit file.

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)

58. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

59. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

60. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

61. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

62. The FCRA requires credit reporting agencies, like Defendants Experian and Equifax to "follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

63. Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, or reasonably available to Defendants.

64. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting consumer bankruptcy information and debts discharged in bankruptcy. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts. Defendants are required to report discharged debts with $0 balances and to indicate that the debt was included in and/or discharged by bankruptcy.

65. Defendants have obtained or have available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

66. Despite knowledge of these legal obligations, Defendants acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

67. Defendants possess information from which Defendants should know the reported information is inaccurate, as Defendants include the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

68. Defendants are also on notice from other furnisher tradelines reported by Defendants that indicate accounts were included in/discharged in bankruptcy.

69. Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

70. Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge, which they failed to timely update.

71. Defendants are additionally notified of Plaintiff's bankruptcy filing and bankruptcy discharge from Plaintiff's tradeline furnishers.

72. The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of those orders upon

certain accounts, including, debts that are discharged, and the status of accounts that have been charged-off and/or sold or transferred prior to or during the consumer's bankruptcy.

73. In this case, the inaccurately reported debts pertain to the Santander and Credit Acceptance Account debts, which Defendants knew predated Plaintiff's Chapter 7 Bankruptcy.

74. Here, Experian inaccurately reported the status of a "charged off" account without indicating that the account was included in bankruptcy, when the account was in fact included in and discharged in bankruptcy. Experian also reported the original balance of the "charged off" along with information that the account was transferred and purchased by another lender.  Experian did not identify the other "lender," Experian did not report that the account was included in bankruptcy, when the account is in fact included in and discharged in Plaintiff's bankruptcy and had a $0 balance.

75. Defendants are well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

76. Nevertheless, Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum

possible accuracy of information pertaining to discharged debts, and accounts that were charged off and sold or transferred prior to or during the consumer's bankruptcy.

77. Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

78. Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

79. Defendants' inaccurate reporting damaged Plaintiff's creditworthiness, as each reported false/non-existent balances and/or non-existent recent late payments for accounts/debts that were included in and discharged by Plaintiff's Chapter 7 bankruptcy and therefore had $0 balances at the time of Defendants' reporting.

80. Defendants are a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff, including, but not limited to, credit denials, embarrassment, anguish, and emotional and mental pain.

81. Consequently, Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

82. Plaintiff's damages include, without limitation, credit harm, loss of credit opportunity, credit denials, and other financial harm.  Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Joseph Hogan respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendant violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.   Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 3rd day of December 2020.

**PRICE LAW GROUP, APC**

By: *s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 385021
**Price Law Group**
8245 N. 85th Way
Scottsdale, AZ 85258
E: jenna@pricelawgroup.com
Telephone: (818) 600-5513
Fax: (818) 600-5413
*Attorney for Plaintiff,*
*Joseph Hogan*